UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Case No. 20-cr-180 (ECT) |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| v. | ) | MOTION TO MODIFY |
| | ) | SENTENCE OF IMPRISONMENT |
| Marc Bell Gonzales, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Marc Bell Gonzales, through undersigned counsel, hereby files this

memorandum in support of his motion for a sentencing reduction under 18 U.S.C.

§ 3582(c) based on his family circumstances (Dkt. No. 38).

Last year, Mr. Gonzales's elderly father, Louis Gonzales (age 81), had a stroke that

has left him severely debilitated.  Louis now resides in a nursing room and requires around-

the-clock medical care.  Mr. Gonzales's mother, Merle (age 74) has had two heart attacks

and has ongoing cardiovascular issues and osteoarthritis that severely limit her physical

activity and make routine household chores extremely difficult or impossible.  Despite

Merle's weakened state, she tries to provide regular care for Mr. Gonzales's two special-

needs children (ages 6 and 5) while their mother works full time.  Besides caring for her

grandchildren, Ms. Gonzales also visits her husband in the nursing home daily to oversee

his medical care.  The situation is causing Merle's already poor health to worsen and puts

Louis's care and Mr. Gonzales's children's care at real risk.

These family circumstances present extraordinary and compelling reasons for a

sentencing reduction.  Mr. Gonzales's parents need him to return to help care for them

given their age and poor health.  They are ill-equipped to care for his young, special-needs

children, who also require his care and support. And there is no other family member who can provide the on-hand support they need. These circumstances thus meet the § 3582(c) extraordinary-and-compelling standard.

The sentencing factors under 18 U.S.C. § 3553(a) favor Mr. Gonzales's early release. Mr. Gonzales has served more than half of his 37-month sentence including good-time credit, and his anticipated release date is just over a year away, on February 13, 2024. His criminal history is mitigated, consisting primarily of driving related offenses and some extremely dated alcohol-possession offenses. He has had only a single disciplinary offense while in prison, for which his penalty was only a temporary loss of commissary. And he has completed important rehabilitative treatment while in prison, including drug education and financial responsibility courses. Probation has approved Mr. Gonzales's release plan to reside with Merle in the family home. Upon release, he plans to reside there and care for his mother, his father, and his children while completing his three-years of supervision with the guidance, resources, and reentry support of probation. These circumstances indicate that Mr. Gonzales has been adequately punished and deterred, is at low risk of reoffending, and would be best positioned to receive additional correctional treatment through supervision. The § 3553(a) considerations thus support release.

Given that Mr. Gonzales satisfies the § 3583(c) standard and that release comports with the § 3553(a) factors, he respectfully requests that this Court grant his motion

**BACKGROUND**

I.      **Case proceedings and Bureau of Prisons placement.**

In August 2020, Mr. Gonzales was charged by information with conspiracy to commit arson during the social unrest that followed the killing of George Floyd in Minneapolis.  *See* Information, Dkt. No. 1, at 1.  He accepted full responsibility for his offenses and swiftly pled guilty to the offense.  *See* Plea Agreement, Dkt. No. 11, at 1–2.  2. His Guidelines range was thirty-seven to forty-six months.  *See* Pre-Sentence Report ("PSR"), Dkt. No. 21, at ¶ 88.  This Court sentenced him to the low end of that range— thirty-seven months—followed by three years of supervised release.  *See* Judgment & Commitment Order, Dkt. No. 36, at 2, 3.

The Federal Bureau of Prisons designated and transferred Mr. Gonzales to the Oxford Federal Correctional Institution.  *See* Assignment History Report, Exh. A, at 1. There, Mr. Gonzales has sought to rehabilitate himself by completing a drug education course, a financial responsibility class, and an anger management class, as well as enrolling in GED classes.  *See id.* at 2, 4.  He was given a job as an orderly.  *See id.* at 5.  He incurred one low-level disciplinary infraction, for which he received a relatively minor sanction of a 45-day loss of commissary, but even so has been reclassified from a high security risk (based on his offense) to a medium security offense, showing that his rehabilitation is moving in a positive direction.  *See id.* at 3; *see also* Disciplinary History, Exh. B, at 1.  Although Mr. Gonzales has struggled with marijuana and alcohol use in the past, he is now sober and is committed to remaining so.  *See* Family Letter of Support, Exh. D, at 2.  Mr. Gonzales has earned good-time credit, giving him a projected release date of February 13, 2024, and a home detention

eligibility date of October 15, 2023 (less than one year from the date of this filing). *See* Sentencing Monitoring Computation Data, Exh. C, at 1. Mr. Gonzales has thus served more than half his sentence with good-time credit.

## II.     Mr. Gonzales's family circumstances.

Mr. Gonzales is a young man from a loving and supportive family. His parents, Merle and Louis Gonzales, are retired education-system professionals. Merle worked as the head of attendance for Minneapolis Public Schools, while Louis established and operated charter schools in California and Minnesota. Mr. Gonzales's parents were strict but loving. They made sure he attended school and got good grades, and they encouraged him to get involved with sports, volunteering, and other extracurriculars. During high school, Lou and Merle moved into different homes, but they maintained their relationship and continued to co-parent Mr. Gonzales and create a supportive family. PSR ¶¶ 53, 54, 58.

When he was 25 years old, Mr. Gonzales had his first child, Silas, with his then-partner, Amber. A year later, the couple welcomed a daughter, Sage. Silas is now six years old, and Sage is five. Although Mr. Gonzales and Amber eventually parted ways, they shared custody of their children. Mr. Gonzales is a devoted father and was active in caring for his children's day to day needs before his incarceration in 2020. PSR ¶ 58.

Caring for Silas and Sage has been uniquely challenging. Silas has been diagnosed with autism. *See* Investigative Report of Aug. 30, 2022, Exh. E, at 1; Investigative Report of Dec. 21, 2022, Exh. F, at 1. He has an individualized education plan and receives special schooling arrangements. *Id*; *see also* Silas Special Education Records, Exh. I. Sage is also suspected of having autism and mental health disabilities. *Id.* She, too, has an IEP and

requires specialized educational and developmental services. *Id*; *see also* Exh. D, at 2; Sage

Special Education Records, Exh. J.

Since Mr. Gonzales's incarceration, Amber has worked two jobs, causing her to be

away from Sage and Silas for more than twelve hours a day during the work week. Exh. E,

at 1. Mr. Gonzales's parents (along with Amber's mother) provide childcare while Amber

was at work. The children spend a significant amount of time in Merle's care, and she does

her best to tend to their special needs at her home.

Tragically, Louis Gonzales suffered a stroke in 2021 that has left him with major

physical and cognitive impairment. Exh. E at 1. Louis is now confined to a wheelchair. *Id.*

He cannot speak. *Id.* His severe disabilities require him to live in a nursing home and get

constant medical care. *Id.* He requires regular physical therapy, occupational therapy, and

speech therapy. *See generally* Louis Gonzales Medical Records, Exh. K. His family has been

told he will never be able to reside at home again. Exh. E at 1. Now, in addition to caring

for Silas and Sage, Merle now also maintains oversight of Louis's care. *See id.* She visits him

in the nursing home every day, sometimes multiple times a day. *See id.*; *see also* Dkt. No. 42,

at 1.

Merle's responsibilities in caring for Louis, Silas, and Sage have taken a toll on her

already vulnerable physical condition. Merle is 74 years old. Four years ago, she had a heart

attack (myocardial infarction), and two years ago she had another cardiac event. Exh. E at 1;

*see also* Merle Gonzales Medical Records, Exh. H, at 1. These episodes have caused

considerable damage to Merle's heart. She has been diagnosed with coronary artery disease.

Exh. H at 1. She also has osteoarthritis, primary osteoarthritis of her right hip, and bursitis

of her right hip. *Id.* Her cardiovascular and osteopathic ailments severely limit Merle's physical activity and decrease her stamina, to the point that she struggles to complete even routine household chores. Exh. E at 1.

Merle will never stop caring for her family. But given her family's increasing needs, caring for them is taking a toll on her. She is physically and emotionally overwhelmed caring for Louis, tending to Silas and Sage and their special needs, and navigating her own medical concerns. Exh. E at 2.

Mr. Gonzales was active in supporting and caring for his children and his parents before his incarceration removed him from his family. *See* Exh. D at 2. If Mr. Gonzales were released to her home (a release plan that probation has approved, *see infra*), he would be able to provide vital, on-hand assistance that would ameliorate the needs of both of his parents and both of his children. He could care for Silas and Sage. He could help manage Louis's care. And he could support Merle with her medical and household needs. Exh. E at 2.

### III.    Release plan.

Probation has filed a report approving Mr. Gonzales's release to his mother's home. *See* Compassionate Release Investigation Report, Dkt. No. 42, at 1. Probation reports that the home is a "suitable release residence for Mr. Gonzales." *Id.* Probation also notes that Mr. Gonzales's mother visits his father in the nursing home two to three times a day and "discussed at length the importance her son's release would play in assisting her with her husband's continued care." *Id.* at 1 – 2. "Based on [this information]," probation reported that "the release residence is APPROVED." *Id.* at 2.

Notably, while probation has the authority to recommend additional and more restrictive conditions of supervision, it determined that Mr. Gonzales does not require any. Having reviewed Mr. Gonzales's pre- and post-sentence and record in custody, probation recommends against imposing additional special conditions of release in this case. Dkt. No. 42, at 2.

In short, Mr. Gonzales is likely to successfully reenter the community with the conditions this Court put in place at sentencing. His family is committed to helping him in that effort. Merle is supportive of her son's sobriety. Exh. D at 1, 2. Mr. Gonzales's Uncle Peter, a reformed addict with whom Mr. Gonzales is especially close, will be a mentor to him upon release. *See id.* at 2, 3. And Mr. Gonzales himself is committing to obtaining outpatient treatment, finding work, furthering his education, and being the stable, sober caretaker his family and community need him to be. *Id.* at 4.

## IV. Exhaustion of compassionate-release request.

Mr. Gonzales submitted a compassionate-release reduction-in-sentence request to the warden, which the warden denied on February 14, 2022. *See* Warden Denial of Compassionate Release, Exh. G at 1. As explained below, Mr. Gonzales has thus satisfied the statutory exhaustion requirement, making this matter ripe for this Court's consideration.

## ARGUMENT

Under 18 U.S.C. § 3582(c), federal district courts are authorized to modify a sentence of imprisonment under specified circumstances, including situations where "extraordinary and compelling reasons warrant" the action. § 3582(c)(1)(A)(i). With the enactment of the

First Step Act in December 2018, a § 3582(c) motion may be brought by either BOP or the

defendant.  *See* Pub. L. No. 115-391, § 603 (Dec. 21, 2018).  If the court grants the motion, it

may "reduce the term of imprisonment" and replace it with an equivalent "term of

probation or supervised release with or without conditions."  18 U.S.C. § 3582(c)(1)(A)(i).

To determine whether the requested relief is permissible and appropriate under

§ 3582(c), the statute directs the court to consider the statutory scheme to determine the

proper legal standard and apply that standard to the particularized facts and circumstances at

hand.  In analyzing the statutory scheme, courts typically consider the following factors:

(I) whether the totality of circumstances indicates that the movant has family or health

circumstances constituting extraordinary and compelling reasons for a reduction;

(II) whether the broader factors that inform federal sentencing decisions support a

modification; and (III) whether the movant complied with the thirty-day waiting period,

within the meaning of § 3582(c).

Here, as explained below, Mr. Gonzales has shown extraordinary and compelling

reasons for a sentencing reduction, the sentencing factors favor release, and Mr. Gonzales

has fully exhausted his claim.  He therefore respectfully asks this Court to grant his motion

to reduce his sentence under the compassionate-release framework.

## I.     Mr. Gonzales's family circumstances are extraordinary and compelling, warranting a sentence reduction.

### A. Legal standard.

Section 3582(c) permits modification of a prison term when the movant

demonstrates that "extraordinary and compelling reasons warrant such a reduction."  18

U.S.C. § 3582(c)(1)(A)(i). The statute states that any modification should be "consistent with the applicable policy statements issued by the Sentencing Commission." This last reference has generally been linked to the United States Sentencing Guidelines and in particular commentary to USSG § 1B1.13, the current version of which was promulgated in November 2018.

Unfortunately, this version of the Guidelines was enacted *before* the current version § 3582(c) went into effect. The Sentencing Commission has not adopted or proposed any subsequent modifications of the § 1B1.13 commentary. Indeed, because the Commission lacks the necessary number of commissioners, no amendments or modifications have even been possible. Thus, the Commission has neither spoken on the current version of § 3582(c) nor addressed its objective of increasing prisoners' access to compassionate-release sentence reductions. For this reason, many courts have employed the commentary to § 1B1.13 as informative, but not dispositive, with respect to the "extraordinary and compelling reasons" inquiry. *See, e.g., United States v. Brown,* 457 F. Supp. 3d 691, 698–701 (S.D. Iowa 2020); *United States v. Cantu,* 423 F. Supp. 3d 345, 350 (S.D. Tx. 2019) (holding that the commentary to § 1B1.13 "is not part of the applicable policy statement binding the court").

With an understanding of the Guideline's non-binding effect, courts have observed that the latest version of § 1B1.13 offers several examples of situations that might constitute "extraordinary and compelling reasons" to justify a § 3582(c) modification, including serious medical conditions, advanced age, and—important to Mr. Gonzales's claim—family circumstances. U.S.S.G. § 1B1.13 app. n. 1(A)–(C). The Sentencing Commission also added

a catch-all: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* app. n. 1(D).

As explained below, while this Court is not bound by § 1B1.13, Mr. Gonzales's family circumstances satisfy the Guidelines criteria and, more fundamentally, the "extraordinary and compelling" statutory standard.

### B. Extraordinary and compelling family circumstances warrant release in Mr. Gonzales's case.

Mr. Gonzales's family circumstances are the type of extraordinary and compelling reason for relief that the compassionate-release statute envisions. In his case, both Mr. Gonzales's parents *and* his children require his assistance given their incapacitation and special needs.

Mr. Gonzales's mother, Merle, is a primary caregiver for his special-needs children, aged six and five, as their mother works two jobs and is away from them twelve hours a day. Exh. E at 1. But Merle is 74 years old and incapacitated by severe heart problems. Caring for her grandchildren thus places both the children and Merle at risk.

Mr. Gonzales's father, Louis, suffered a stroke and requires constant medical care and oversight. *See* Exh. E at 1; *see also* Exh. K. Merle tries to visit him daily to oversee his medical requirements and tend to his other needs, but this puts a strain on her as well. *See* Exh. E at 1; Dkt. No. 42 at 1–2. Merle and Louis have another son but are estranged from him. Exh. E at 1. Mr. Gonzales is the only available caregiver for both of his aging, ailing parents. Exh. E at 2; Dkt. No. 42 at 1–2. And his young children also need him home to

provide the specialized care and attention that their mother cannot while she works. *See* Exh. E at 1; *see generally* Exhs. I & J.

Courts have found that a person's need to care for an ailing parent constitutes an extraordinary and compelling circumstance when the parent requires assistance with daily-living functions and the petitioner is the only available caregiver. For example, Judge Frank recently granted a compassionate release motion under these circumstances in *United States v. Meister*, No. 17-CR-296 (DWF), Dkt. No. 141, at 1 (D. Minn. Nov. 16, 2022). Judge Frank found that the defendant's "eighty-year-old mother suffers from a variety of illnesses that render her unable to sufficiently care for herself" and his "stepfather is also ill and requires assistance." *Id.* at 4. Judge Frank recognized that the defendant's siblings lived nearby. *Id.* Nonetheless, he determined that only the defendant could provide the level of in-home care that his parents needed. Judge Frank found based on these facts that the defendant "has demonstrated extraordinary and compelling reasons for a sentence reduction." *Id. See also United States v. Hernandez*, No. 16-CR-20091, 2020 WL 4343991 at *1 (S.D. Fla. Apr. 3, 2020) (finding such when inmate only available caregiver for elderly, functionally blind mother in remission from cancer and suffering from severe mobility limitations); *United States v. Walker*, No. 11-CR-270, 2019 WL 5268752 at *2 (N.D. Ohio Oct. 17, 2019) (finding such in inmate's "desire to aid his terminally ill mother, both emotionally and financially"); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass 2019) (finding such when inmate is the "only available caregiver" for an incapacitated parent and stating that there is "no reason to

discount this unique role simply because the incapacitated family member is a parent and not a spouse.").[1]

Likewise, courts have found that a person's need to care for minor children constitutes an extraordinary and compelling reason for release. *See United States v. Crumble*, No. 18-CR-00017(ADM), 2021 WL 1617106, at *3 (D. Minn. Apr. 26, 2021). In *Crumble*, Judge Montgomery granted the defendant's compassionate-release motion because the defendant's children were split up among his sisters after the children's mother and grandmother passed away. *See id.* Even though the children were in the "interim care" of the defendant's sisters, Judge Montgomery determined that "Mr. Crumble has . . . shown the existence of extraordinary and compelling reasons for a sentence reduction" because the children's mother and grandmother had died. *See id.* The court indicated that the children's trauma after being separated from their family, having their father incarcerated, and losing their primary caregivers further compelled release. *See id. See also see also United States v. Wessels*, No. 12-CR-118(7)(JRT), 2021 WL 5506656, at *2, (D. Minn. Nov. 24, 2021)

---

[1] *See also United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) (finding that the defendant's status as the sole available caregiver for his sick mother constituted an extraordinary and compelling circumstance); *United States v. Lara-Villaruya*, No. 3:18-CR-03425-GPC, 2020 WL 6395876, at *5 (S.D. Cal. Nov. 2, 2020) (stating that the need to care for an incapacitated parent could be an extraordinary and compelling circumstance); *United States v. Yoda*, No. 15-CR-95-AJN, 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020) ("[T]he Court finds that the need to care for one's aging and sick parent may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists."); *United States v. Ledezma-Rodriguez*, No. 3:00-CR-00071, 2020 WL 3971517, at *7 (S.D. Iowa, July 14, 2020) (finding that the need to care for a parent could constitute extraordinary and compelling circumstance). *See also United States v. Alvarado*, S.D.Cal.2021, 2021 WL 5294943; *United States v. Vargas*, 502 F. Supp. 3d 820, 828 (S.D.N.Y. 2020). *But cf United States v. Proudfoot*, No. CR 14-192 ADM/LIB, 2020 WL 5500459, at *2 (D. Minn. Sept. 11, 2020); *United States v. McClellan*, No. CR 16-102 ADM/HB, 2021 WL 1873426, at *1 (D. Minn. May 10, 2021), aff'd, No. 21-2175, 2021 WL 5822704 (8th Cir. June 3, 2021).

(granting defendant's compassionate-release motion upon finding that defendant's mother was recovering from a recent serious injury and defendant's father had multiple joint replacement and spinal surgeries, thus satisfying the definition of "incapacitation" and rendering them unable to care adequately for defendant's children).

Finally, courts have found that compassionate release may be warranted when, as here, a defendant has ailing parents whose health prevents them from adequately caring for the defendant's children (their grandchildren). *See Wessels*, 2021 WL 5506656, at *1; *United States v. Peoples*, 15-CR-165(JRT), at 1 (D. Minn. Apr. 28, 2022). Judge Tunheim's decision in *Wessels* is instructive. The defendant in *Wessels* had two children whose mother struggled with drug addiction. *See* 2021 WL 5506656, at *2. Therefore, when the defendant was convicted of conspiracy to distribute methamphetamine, his parents assumed care for the children. *See id.* at *1. Unfortunately, while the defendant was incarcerated, his mother sustained a serious fall that confined her to a nursing home, and his father, though able to be home with the children, received several joint and spinal surgeries, indicating that he was prone to falls and had limited mobility. *See id.* Judge Tunheim found that the parents' conditions "have made rendering care to Wessels's children incredibly difficult." *Id.* at *2. Therefore, the court concluded, the defendant's parents were "incapacitated," creating an extraordinary and compelling reason for release. *Id.* Considering that the defendant had a mitigated criminal history that was tied to addiction and had participated in extensive educational and vocational programs while incarcerated, Judge Tunheim granted the defendant's motion for a sentence reduction. *See id.*

13

The analyses in *Meister*, *Wessels*, and *Crumble* should guide this Court here.  Just as the defendant's mother and stepfather in *Meister* were aging and ill, requiring his care, so too do Mr. Gonzales's elderly and incapacitated parents require his care.  This alone is an extraordinary and compelling reason for release.

But beyond that, the needs of Mr. Gonzales's young children also present extraordinary and compelling reasons for compassionate release.  Just as the health circumstances of the defendant's parents "made rendering care to Wessels's children incredibly difficult," so, too, do Merle and Louis Gonzales's severe heart problems and stroke, respectively, make rendering care for their grandchildren difficult and dangerous.  This is especially true given the special needs of Mr. Gonzales's young, autistic children, which sets his case apart from *Wessels*.  And while the children's mother is not an addict, as in *Wessels*, she is nonetheless unavailable to provide the level of care that her children need from day to day given their disabilities and her work schedule.  Moreover, here, as in *Crumble*, Mr. Gonzales' children have been traumatized by the incapacitation of their grandparents and by their father's incarceration.  With their mother unavailable during much of the week and their grandparents' increasingly unavailable due to their health concerns, it is likely that the children will require the care of a non-family member when their mother is unavailable.  Given their young age and their special needs, they are unlikely to get the love and support they need from a non-family member.

Furthermore, like the defendant in *Wessels*, Mr. Gonzales has a mitigated criminal history and has completed significant programming in prison.  And like the defendant in *Meister*, his release plan to his mother's home will facilitate his ability to care for his family

members while also providing the stability and structure that are key to a successful reentry. Thus, just as in *Meister*, *Wessels*, and *Crumble*, this Court should determine that Mr. Gonzales's family circumstances satisfy the extraordinary and compelling standard under § 3583(c).

## II.   The § 3553(a) factors weigh in favor of Mr. Gonzales's release.

### A.   Legal standard.

Section 3582(c) permits a sentence modification upon the court giving due "consider[ation to] the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).  The statute provides that:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)     the need for the sentence imposed-(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)     the kinds of sentences available;
> (4)     the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5)     any pertinent policy statement . . . issued by the Sentencing Commission;
> (6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Moreover, the Supreme Court requires that courts consider post-offense developments when resentencing people, to determine "the most up-to-date picture" of the defendant's history, and to predict the likelihood of re-offense. *Pepper v. United States*, 562 U.S. 476, 490-93 (2011). As explained below, the § 3553(a) factors and *Pepper* considerations favor Mr. Gonzales's release.

> **B.      Reducing Mr. Gonzales's sentence is consistent with the relevant sentencing factors and post-offense considerations.**

The § 3553(a) factors and post-sentencing considerations weigh in favor of Mr. Gonzales's release. Mr. Gonzales has served more than half of his sentence. His home confinement date is less than ten months away, and his expected release date is only about a year away. *See* Exh. C, at 1. Given the amount of time that Mr. Gonzales already has served to date, early release would still reflect the seriousness of the offense for which he was convicted. The length of time served also promotes respect for the law, and it provides just punishment. And his time in custody thus far has served to deter Mr. Gonzales and protect the public from future crimes.

Notably, this is Mr. Gonzales's first federal offense and only his second felony offense (the first being a twelve-year-old state robbery conviction, from 2010; the offense conduct in that case is remote in time and has never been repeated). *See* PSR ¶¶ 33–41. Mr. Gonzales's limited disciplinary record and successful programming further serve as indicators that he will succeed upon reentry. *See* Exhs. A & B. While recurrent pandemic lockdowns have made it difficult for Mr. Gonzales to do all the programming he would have liked, he has made the most of his time in custody. He has completed a drug-education

16

course.  *See* Exh. A, at 2.  And he has committed to continued education and programming upon release.  *See* Exh. D at 2.

Mr. Gonzales is focused on leading a productive life and caring for his parents and children upon release.  He has an approved release plan to a safe, stable home, where he can provide the care that his aging, ailing parents and his young children desperately need.  Dkt. No. 42, at 1–2; *see also* Exh. E at 2.  His family and community ties are reflected in the approved release plan, which show a level of support that is a credit to Mr. Gonzales, his family, and his community.  Dkt. No. 42, at 1–2.

Mr. Gonzales's circumstances demonstrate that he is prepared to re-enter society and remain law-abiding.  Indeed, Mr. Gonzales's family circumstances themselves protect against recidivism: being home with his parents and children and assuming primary responsibility for overseeing their care and wellbeing will provide needed structure and perspective and will be significant deterrents to reoffending.

In short, modifying Mr. Gonzales's sentence will honor the § 3553(a) sentencing goals, particularly given that he will be subject to strict terms of supervised release for three years upon release.  If there is any doubt, the Court can further modify those supervised release terms (although probation has not identified a need for this, *see* Dkt. No. 42, at 2.  Put simply, further imprisonment is not necessary or consistent with the statutory or policy goals underlying federal sentencing.  The sentencing factors thus militate in favor of Mr. Gonzales's compassionate release.

### III. Mr. Gonzales has exhausted his administrative remedies and his motion is properly before this Court.

#### A. Legal standard.

Section 3582(c)(1) provides that a court can consider a defendant's motion for compassionate release when:

> (a). the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

> *or*

> (b). the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*.

18 U.S.C. § 3582(c)(1)(A) (headings, emphases, and formatting added).  In other words, the statute requires the defendant to request that BOP make a § 3582(c) motion on his behalf and then wait until either BOP rejects his request or thirty days pass without a response.  *See, e.g., United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020); *United States v. Brown,* 457 F. Supp. 3d 691, 696–97 (S.D. Iowa Apr. 29, 2020).

#### B. Mr. Gonzales has exhausted his administrative remedies and this motion is properly before this Court.

Mr. Gonzales has satisfied § 3582(c)(1)'s exhaustion requirement.  He submitted a request for compassionate release to the warden based on his family circumstances, which the warden denied on February 14, 2022.  *See* Exh. G.  Mr. Gonzales's motion is thus ripe. He urges this Court to grant it.

## CONCLUSION

Given Mr. Gonzales's extraordinary and compelling reasons for release, he

respectfully requests that this Court reduce his sentence to time served.

Dated: December 23, 2022                    Respectfully submitted,

                                            *s/ Sarah Weinman*
                                            Sarah Weinman
                                            Assistant Federal Public Defender
                                            Office of the Federal Defender
                                            107 U.S. Courthouse
                                            300 South Fourth Street
                                            Minneapolis, MN 55415
                                            Attorney for Mr. Gonzales