```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA

-----------------------------------------------------------
                         )  COURT FILE
UNITED STATES of AMERICA  )  NO. 20-CR-180 (ECT)
                         )
         vs.             )  Courtroom 3B
                         )  Wednesday, June 2, 2021
MARC BELL GONZALES        )  St. Paul, Minnesota
                         )  9:00 A.M.
-----------------------------------------------------------
```

### S E N T E N C I N G

**BEFORE THE HONORABLE ERIC C. TOSTRUD**
**UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S:**

For the Government:   **OFFICE OF THE U.S. ATTORNEY**
                      By:  ANDREW R. WINTER
                           Assistant U.S. Attorney
                      600 United States Courthouse
                      300 South Fourth Street
                      Minneapolis, Minnesota  55415

For the Defendant:    **KASSIUS BENSON LAW, P.A.**
                      By:  KASSIUS O. BENSON, ESQUIRE
                      3201 Hennepin Avenue
                      Minneapolis, Minnesota  55408

**TIMOTHY J. WILLETTE, RDR, CRR, CRC**
Official Court Reporter - United States District Court
Warren E. Burger Federal Building & U.S. Courthouse
316 North Robert Street - Suite 146
St. Paul, Minnesota  55101
651.848.1224

1        (9:00 a.m.)

2                        **P R O C E E D I N G S**

3                           **IN OPEN COURT**

4        (Defendant present)

5             THE COURT:  Good morning, everyone.  Please be

6    seated.

7             We're here this morning for sentencing in United

8    States of America versus Marc Bell Gonzales.  This is

9    Criminal File Number 20-180.

10             Good morning, Mr. Gonzales.

11             THE DEFENDANT:  Good morning, Your Honor.

12             THE COURT:  All right.  At this time I'll invite

13    counsel to note their appearances for the record, starting

14    with the Government.

15             MR. WINTER:  Good morning, Your Honor.  Andrew

16    Winter appearing on behalf of the United States.

17             THE COURT:  Good morning, Mr. Winter.

18             MR. BENSON:  Good morning, Your Honor.  Kassius

19    Benson appearing for Mr. Gonzales, who's present to my left.

20             THE COURT:  Good morning, Mr. Benson.  Mr. Benson,

21    did I read that you have a new job that you'll be starting

22    soon or perhaps already have?

23             MR. BENSON:  I do, Your Honor, and I have.  I

24    am -- yes, I'm the Chief Public Defender in Hennepin County.

25             THE COURT:  Congratulations.

1            MR. BENSON:  Thank you.  Thank you.

2            THE COURT:  All right.  Mr. Gonzales previously

3    pleaded guilty to conspiracy to commit arson in violation of

4    18 U.S.C., Sections 371 and 844(i).

5            Mr. Winter, the Government's received a copy of

6    the PSR and addendum?

7            MR. WINTER:  Yes, Your Honor.

8            THE COURT:  And as I understand, no outstanding

9    objections from the Government.

10           MR. WINTER:  That's correct.

11           THE COURT:  And, Mr. Benson, have you and

12   Mr. Gonzales received a copy of the PSR and addendum?

13           MR. BENSON:  Yes, Your Honor.

14           THE COURT:  And have you reviewed and discussed

15   those documents?

16           MR. BENSON:  Yes, Your Honor.

17           THE COURT:  And am I correct that there are no

18   outstanding objections?

19           MR. BENSON:  Correct, Your Honor.

20           THE COURT:  Okay.  I understand there's an

21   argument or suggestion that Mr. Gonzales's criminal history

22   is overstated, but I'll treat that as either a suggestion

23   for a departure or variance and I'll deal with that

24   separately.  Is that fair?

25           MR. BENSON:  That is fair, Your Honor.

1        THE COURT:  Okay.

2        All right.  I'll grant a two-level downward

3   adjustment in the offense level for acceptance of

4   responsibility pursuant to Guidelines Section 3E1.1(a).

5        Mr. Winter, does the Government move for an

6   additional one-level reduction?

7        MR. WINTER:  We do, Your Honor.

8        THE COURT:  All right.  That motion's granted.

9   I'll also adopt as the findings of the Court all of the

10   factual statements contained in the PSR, so I determine the

11   guidelines apply as follows:

12        We have a Total Offense Level of 17; a Criminal

13   History Category of IV; a guidelines imprisonment range of

14   37 to 46 months; a supervised release range of one to three

15   years; a fine range of $10,000 to $95,000; and a special

16   assessment that's mandatory in the amount of $100.

17        Mr. Winter, any corrections or objections to

18   those?

19        MR. WINTER:  No, Your Honor.

20        THE COURT:  Mr. Benson, same question.

21        MR. BENSON:  No, Your Honor.

22        THE COURT:  Okay.

23        All right.  Mr. Gonzales, here's how things are

24   going to go today.  We'll talk about this issue relative to

25   your criminal history that Mr. Benson's raised and deal with

1    that, and when we've concluded with that Mr. Winter will

2    have an opportunity to say anything that he'd like to say

3    about what he thinks should be an appropriate sentence in

4    your case.

5           At that time, after that, Mr. Benson will have an

6    opportunity to say anything that he'd like to say and

7    advocate on your behalf for what he thinks should be an

8    appropriate sentence in this case.

9           And then lastly I'll give you an opportunity to

10   speak and to tell me anything about how you came to be here

11   today and what you think about an appropriate sentence in

12   this case.

13          Before we do all that, I want you to know a couple

14   things.

15          First thing I want you to know is, if this isn't

16   the most important day in your life, it's right up there and

17   we're going to treat it that way.

18          And the second thing I want you to know is I've

19   read everything.  I read the PSR, I read additional

20   submissions following the PSR, and I've also reviewed the

21   letters that I've received, letters from your family, from

22   your friends, from your uncle, I believe, and all of that

23   was very helpful to me in getting to know you and trying to

24   understand you, all right?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Does all that make sense?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Okay.  Let's deal with the overstated

4     criminal history issue separately, if that's okay.

5          So under Guidelines Section 4A1.3(b):  "If

6     reliable information indicates that the defendant's criminal

7     history category substantially overrepresents the

8     seriousness of the defendant's criminal history or the

9     likelihood that the defendant will commit other crimes, a

10    downward departure may be warranted."

11         For example:  "A downward departure from the

12    defendant's criminal history category may be warranted," an

13    application note teaches, "if the defendant had two minor

14    misdemeanor convictions close to ten years prior to the

15    instant offense and no other evidence of prior criminal

16    behavior in the intervening period."

17         Here, I understand Mr. Gonzales to be arguing or

18    suggesting that his Criminal History Category of IV

19    substantially overrepresents the seriousness of his criminal

20    history.

21         Mr. Benson, any additional argument or discussion

22    that you think is necessary with respect to that issue?

23         MR. BENSON:  No, Your Honor.  I will just note

24    that I'm aware of the law.  I will just note this, that

25    his -- as Your Honor sees, he has a point for driving

1    without a valid license, which is 2018, so it's not ten

2    years ago, it's not over ten years, but a driving without a

3    valid license misdemeanor, 2018.  He has a point for driving

4    while intoxicated, which was a gross misdemeanor, but it was

5    a misdemeanor, 2019, and then he had two points there added

6    because at the time of the instant offense he was

7    committed -- well, under a criminal justice sentence, which

8    means he's on probation.

9            So we're looking at -- the reason I raise the

10   issue, he's looking at four points for misdemeanor offenses.

11   Now, they're not, you know, at a ten-year point in time.

12   However, I think it's significant when we look at -- we're

13   aware, obviously, we're definitely aware of his -- he's got

14   the robbery conviction, very serious, that should count.  I

15   submit to the Court whether it's towards, like, a variance

16   or it's on this particular issue, I think his four points

17   for misdemeanor offenses does exaggerate and I'd say in this

18   case substantially exaggerates his criminal history score,

19   or category.  That's all.

20           THE COURT:  Thank you.  Mr. Winter, anything that

21   you'd like to comment on with respect to that issue?

22           MR. WINTER:  We respectfully disagree and would

23   really just cite to the guidelines provision the Court read

24   into the record as just not meeting those basic

25   requirements.

1          THE COURT:  I agree and I'll deny the motion.

2          Mr. Gonzales's criminal history is not like the

3   example provided in the Application Note to Section

4   4A1.3(b).  His 2010 conviction for second degree armed

5   robbery was quite serious.  He violated his probation in

6   connection with that offense.  His criminal history since

7   has been, I think it's more fair to say, consistent, not

8   sporadic.

9          I'll grant that Mr. Gonzales's more recent

10  criminal history is not extreme and does not reflect acts of

11  direct violence, but those are factors, I think, that are

12  more appropriately considered under Section 3553(a) when I

13  consider the history and characteristics of Mr. Gonzales and

14  not as a basis for a downward departure under 4A1.3(b).

15         All right.  Mr. Winter, I take it nothing has

16  changed with respect to restitution.

17         MR. WINTER:  That's correct.  Wells Fargo is not

18  seeking restitution in this case.

19         THE COURT:  Okay.  So we don't have to worry about

20  that here.

21         All right.  Mr. Winter, why don't you tell me

22  anything that you want to tell me about what the Government

23  thinks is an appropriate sentence here.

24         MR. WINTER:  Your Honor, the Government maintains

25  that the low end of the guidelines range, i.e., 37 months,

1   we assess to be a fair and reasonable sentence in this case.

2           The things that I would highlight which were

3   really discussed in the memorandum, but I would just kind of

4   point out, I guess, that what I consider to be the driving

5   factors here is that while this was a bank building,

6   Mr. Gonzales wouldn't know and couldn't know if there was

7   anyone inside the building when he helped burn it down.  He

8   wouldn't know and couldn't know what kind of dangers the

9   firefighters encountered when they came to put the fire out

10  that Mr. Gonzales helped start.

11          And these are -- just the whole notion of an arson

12  is indicative of disregard for public safety and in a way

13  that is so far beyond his control.  He starts something that

14  he literally cannot control.  And to do it -- you know, the

15  videos make it look like he was gleefully participating in

16  this conduct, raising the gas can above his head, the crowd

17  is chanting, "Burn it down, burn it down," and then he does

18  what he does.

19          This on top of the fact that he has had a number

20  of contacts with the criminal justice system that by the age

21  of 28 one would hope would have sunk in, that this is not

22  the route to go.

23          The Government is fully aware based on the PSR

24  that he clearly has struggled with chemical dependency

25  issues and that chemical dependency has driven much if not

1    all of his criminal conduct.  And the Government is aware

2    that certainly as of recently he seems to be making a

3    good-faith effort to get that under control, which I think

4    bodes well for the future, which is one of the reasons why

5    the Government feels comfortable recommending the low end of

6    the guidelines range in this case, because it is not all a

7    bad news story in our estimation.

8              So, at the end of the day we do feel that on

9    balance, looking at all the 3553(a) factors, that the low

10   end of the range is -- provides an appropriate sentence.

11             And the last comment is simply, we appear to be

12   living in times where civil disorder is more common perhaps

13   than it used to be, and so the notion of specific deterrence

14   as to Mr. Gonzales's own life, I think the point will be

15   made by a three-year prison sentence, that this will

16   hopefully deter him from this kind of conduct in the future.

17   I also believe that the general deterrence here where if you

18   participate in a riot and you burn a building down, you're

19   going to do some time, is not a bad message to be sent and

20   is part of the 3553(a) consideration.

21             So for all those reasons, that is our

22   recommendation.  Thank you.

23             THE COURT:  Thank you.

24             Mr. Benson?

25             MR. BENSON:  Yes, Your Honor.  Considering the

1   3553 --

2              THE COURT:  Oh, sorry, Mr. Benson.  I should ask

3   you to turn your mic on.

4              MR. BENSON:  I was warned.  I apologize.

5              Yes, Your Honor, considering the 3553(a) factors

6   and as I submitted in the document, a sentence no greater

7   than the bottom of the guideline box -- I mean, there was a

8   plea agreement in this case.  The Court's got to determine a

9   sentence that's appropriate under 3553(a).  They indicated

10  that 27 months, bottom of the box, which we had talked about

11  at the time of the plea, it was raised given the criminal

12  history score as it came out.  I'd ask the Court to consider

13  those factors when imposing a proper sentence, the 3553(a)

14  factors.

15             This was an act that was dangerous.  Mr. Gonzales

16  acknowledged in his presentence investigation that, you

17  know, once he sobered up and he realized and he thought

18  about it and he knew, you know, at that point he didn't know

19  if somebody was in that building or not.  There's no dispute

20  that this was an action which -- as far as the action

21  itself -- which was dangerous.  However, I think it should

22  be tempered with the understanding of the circumstance and

23  his problems with chemical use, his intoxication that night,

24  which is not an excuse, but an explanation, and as something

25  that in a sober moment he would not have participated in.

1            We also should acknowledge at least that this was

2    a circumstance that was unique and exceptional.  It was in

3    the context of a protest, if you will.  It's been talked

4    about as a riot with the George Floyd incident.  It was

5    something that was unique and exceptional.  So when we

6    consider deterrence, as Mr. Gonzales indicated, he was swept

7    up in the events that night and, you know, it had been -- he

8    was celebrating his birthday, he was swept up in the events

9    that night, and we look at whether specific or general

10   deterrence, what level of sentence, what amount of months is

11   necessary to address those issues.

12           From a specific deterrence standpoint, I'd submit

13   to the Court that Mr. Gonzales, but for the unique

14   circumstances, would not have found himself in a situation,

15   would not have grabbed the gas can, would not have poured

16   the gas can on the flame that was already started, but for

17   those unique circumstances, which is unlikely to repeat in

18   those circumstances.

19           So as far as specific deterrence for Mr. Gonzales,

20   I think it's more what amount of months is necessary -- and

21   I'll just be frank about it -- for punishment purposes as

22   opposed to saying specific deterrence, because it's not

23   something that he is likely to repeat and he would likely

24   not have done it except for the extraordinary circumstances,

25   I mean, the situation.  He's not justifying it, but as a

1    unique set of circumstances.

2         As far as general deterrence, I think there could

3    be some value in general deterrence in a sense; however, I

4    don't think that 37 months is necessarily -- I think that's

5    more than enough, that's more time than necessary to make

6    that point.

7         Looking at the other factors for sentencing in

8    this case, Mr. Gonzales himself.  He has made strides

9    recently.  With any chemical dependency there is a chance of

10   relapse.  You saw from the release report that he did have a

11   relapse recently based upon the stress, you know, that he is

12   facing.  To everyone's credit, I believe -- you know, his

13   probation officer talked to him about it.  He had actually

14   gone back to his classes.  He reinvested in the treatment

15   that he had before, he had done inpatient treatment.  He's

16   in the out-of-custody treatment.

17        And what I really applaud and I think is excellent

18   was that there was a discussion with him about how he could

19   handle it and could he handle it, and then he was allowed to

20   remain in the program and he's making those strides.

21        So there is -- as far as how much time is

22   necessary for him to continue to benefit from chemical

23   dependency treatment, which is one of the driving problems

24   in his life which led to a number of these issues, he's

25   showing that he's making these strides in an out-of-custody

1    setting.  If he's in custody, I'd submit to the Court he

2    doesn't need 37 months to have further treatments, to be

3    able to benefit from treatment so when he's released he can

4    be more productive in society.  But I'd also note that

5    looking at him personally and his circumstance in this, he's

6    got a family, he's got children, he's got a job, he started

7    a business, he's doing productive things.  So while there

8    may be -- there's going to be an interruption in what he's

9    doing to serve his sentence that is required by his conduct,

10   I ask the Court to make it as short as possible so he can

11   get back to the positive things that he's building and has

12   built.

13            So, given all of those circumstances, what I've

14   addressed in the memo, what I've said now, looking at the

15   3553(a) factors, I'd ask the Court to give a sentence,

16   understanding the plea agreement, what we talked about at

17   the beginning of this process, around the 27-month range

18   would be more commiserate with those 3553(a) factors, so I

19   ask the Court to consider that.

20            THE COURT:  Thank you.

21            Mr. Gonzales, this is your opportunity to tell me

22   anything that you'd like to tell me about an appropriate

23   sentence in this case.

24            I guess the other thing that I failed to mention

25   earlier, but I want you to know -- it's not in the PSR or

1    any of the papers that I received, but I was informed this

2    morning that your dad has had a stroke and I wanted to let

3    you know that I knew that and that I'm sorry to hear that.

4    Do I understand that correctly?

5            THE DEFENDANT:  Yes.  Thank you.

6            THE COURT:  And I'm sorry about that.

7            THE DEFENDANT:  Thank you.  I appreciate that.

8            I am definitely aware of the severity of the crime

9    that I have committed and I know I have a lot of patterns

10   and I have worked really hard to correct those patterns.

11   People look at your past no matter what.  And I deeply

12   apologize to the community that was affected, as well as my

13   family, because I do feel like it has affected both.

14           And for a lesser sentence would definitely be very

15   possible for me to go back to the business and the family

16   that I have created.  And I am aware of the sentencing that

17   I am about to receive is appropriate regardless because of

18   the severity of the crime that I have committed.

19           THE COURT:  Thank you.

20           (Pause)

21           THE COURT:  All right.  It's time for sentencing.

22           Mr. Gonzales, you've been charged with and you've

23   pleaded guilty to one count of conspiracy to commit arson in

24   violation of 18 U.S.C., Sections 371 and 844(i).

25           Based on your plea of guilty, it is considered and

1    adjudged that you are guilty of the offense, and it is the

2    judgment of the Court that you, Marc Bell Gonzales, be

3    committed to the custody of the Bureau of Prisons for

4    imprisonment for a term of 37 months.

5            I will recommend participation in the RDAP program

6    if you are eligible.

7            Mr. Benson, is there a facility designation

8    request?

9            MR. BENSON:  Yes, Your Honor.  It would be

10   definitely the state of Minnesota, the Duluth facility.

11           THE COURT:  All right.  I'll recommend designation

12   to the Duluth FPC or, if not available, then another

13   facility in Minnesota, or if unavailable, then a facility as

14   close to Minnesota as possible.

15           On release from imprisonment I will order that you

16   serve a supervised release term of three years.  While on

17   supervised release you must comply with the following

18   mandatory conditions:

19           You shall not commit any crimes, whether federal,

20   state, or local.

21           You shall not unlawfully possess a controlled

22   substance.  You shall refrain from any unlawful use of a

23   controlled substance and submit to one drug test within 15

24   days of release on supervised release and at least two

25   periodic drug tests thereafter as determined by the court.

1          You shall cooperate in the collection of a DNA

2    sample as directed by the United States Probation Office.

3          You shall notify the court of any material change

4    in your economic circumstances that might affect your

5    ability to pay the special assessment that the law requires

6    me to order, and I'll do that shortly.

7          It is also required that you abide by the standard

8    conditions of supervised release that have been adopted in

9    this district and a copy of those will be provided to you at

10   a future date.  While on supervised release, I'll order that

11   you comply with five special conditions.  I'll list those

12   now.

13         First, you shall abstain from the use of alcohol

14   and other intoxicants and not frequent establishments whose

15   primary business is the sale of alcoholic beverages.

16         Second, you shall complete an immediate assessment

17   or participate in a program for substance abuse as approved

18   by the Probation Office upon release or relapse during your

19   term of supervised release.  That program may include

20   testing and inpatient or outpatient treatment, counseling,

21   or a support group.  You shall contribute to the costs of

22   such program or treatment as determined by the Probation

23   Office Co-Payment Program, not to exceed the total cost of

24   treatment.

25         You shall participate in a psychological or

1   psychiatric counseling or treatment program as approved by

2   the probation officer.  Further, you shall contribute to the

3   costs of such treatment as determined by the Probation

4   Office Co-Payment Program, again, not to exceed the total

5   cost of treatment.

6          I will order that you have no contact with the

7   victim, including -- and by "no contact" I mean any form of

8   contact:  letters, communication devices, audio or visual

9   devices, visits, or any contact through a third party,

10  without prior consent of the probation officer.

11         Finally, you shall be screened for and/or

12  participate in Reentry Court programming and shall abide by

13  all rules of that program.  Participation in Reentry Court

14  programming may include referrals for substance abuse

15  assessment, or treatment and testing, mental health

16  assessment and/or treatment, cognitive behavioral programs,

17  medication compliance, and any other program deemed

18  appropriate to enhance your successful reintegration into

19  the community.  You shall contribute to the cost of this

20  program as to substance abuse and/or mental health

21  assessment or treatment to the extent you are deemed capable

22  by the United States Probation Officer.

23         I will impose no fine because I find that

24  Mr. Gonzales cannot afford to pay a fine in the established

25  range at this time.

1          I will not order restitution because none has been

2    requested.

3          I will order that you pay a special assessment in

4    the amount of $100 that's due to the United States

5    immediately.

6          Mr. Gonzales, the law requires me to explain the

7    reasons for the sentence I've imposed, so I'll do that at

8    this time.

9          In determining what sentence to impose, I've

10   treated the range recommended by the United States

11   Sentencing Guidelines as the starting point and the

12   benchmark as United States Supreme Court precedent requires.

13         I have not presumed that the guidelines range is

14   reasonable.  I have instead considered all of the factors

15   described in 18 U.S.C., Section 3553(a), including

16   particularly the need for the sentence to be sufficient, but

17   not greater than necessary, to comply with the purposes set

18   forth in Section 3553(a)(2).

19         In particular, as to the sentence of imprisonment,

20   the nature and circumstances of the offense are described in

21   the PSR.  I have reviewed and considered them.

22         Mr. Gonzales participated in an arson that caused

23   the Wells Fargo Bank building located at 3030 Nicollet

24   Avenue South in Minneapolis to collapse, resulting in a

25   total loss of the structure.

1          Encouraged by a crowd shouting, "Burn it down,"

2    Mr. Gonzales held a gasoline container above his head and

3    poured it into the fire.  No evidence suggests Mr. Gonzales

4    determined or cared whether someone might have been in the

5    building.  No evidence suggests he cared at all about the

6    risk of the fire spreading, the risk it might injure

7    bystanders, or the risk to first responders.

8          I will grant that Mr. Gonzales's history of

9    substance abuse and the fact that he was under the influence

10   of alcohol that evening might be mitigating factors, but

11   these are counterbalanced in my view by his criminal record.

12   In other words, Mr. Gonzales's record makes it difficult for

13   me to accept the impulsivity of his actions here as a

14   mitigating factor.

15         And I note that Mr. Gonzales also was observed on

16   surveillance video looting and fire-setting in an Office

17   Depot on Nicollet Avenue in proximity to the Wells Fargo

18   Bank.

19         I also think it's significant that Mr. Gonzales's

20   actions did significant damage to a community that was

21   already struggling and already reeling from recent events.

22   In a neighborhood where things were difficult enough,

23   Mr. Gonzales's actions made things worse.  The collateral

24   effects of this conduct continue to this date given that

25   that community has yet to rebuild, and in fact rebuilding

1    seems a ways off.  The bottom line here is that it's hard to

2    find many mitigating circumstances or factors or a reason to

3    sentence Mr. Gonzales outside of the guidelines.

4            I recognize that this is a significant graduated

5    sanction for Mr. Gonzales.  Though he has been involved with

6    the criminal justice system consistently since 2009, his

7    sentences have included fines, probation, and custody terms

8    between 30 days and 24 months.  I think a within-guidelines

9    sentence of 37 months is nonetheless warranted to account

10   for the seriousness of the offense, a lack of mitigating

11   factors, Mr. Gonzales's history of noncompliance with

12   supervision conditions in the past, and his noncompliance

13   with the conditions of release in this case.

14           And I'd add the fact that he was under a criminal

15   justice sentence at the time of his involvement in this

16   case.

17           Mr. Gonzales has correctional needs in the areas

18   of substance abuse, mental health, educational and

19   vocational training, that may be met by BOP programming, but

20   those needs and factors have not weighed into the length of

21   sentence that I've imposed here.

22           I have reviewed sentences imposed on others for

23   this offense -- and by "others" I mean others generally and

24   also others on the same night and at the same time as this

25   offense was committed, and I find that this sentence will

1     impose no unwarranted disparities.

2             As to the term and conditions of supervised

3     release, I think that alcohol substance abuse and mental

4     health issues make those conditions that I've imposed, those

5     special conditions that I've imposed, sort of self-evident,

6     or the need for and reasons for those self-evident.  I'm

7     just trying to give Mr. Gonzales and his probation officer

8     the tools they need to assure Mr. Gonzales's successful

9     reentry into society.

10            Mr. Gonzales, the law requires me to advise you of

11    your appeal rights, and so I'm going to do that at this

12    time.

13            You have the right to appeal your conviction if

14    you believe that your guilty plea was unlawful or invalid

15    for any reason.  In general a defendant has the right to

16    appeal his sentence; however, you entered a plea agreement

17    and in that plea agreement you gave up some of your rights,

18    including your right to appeal a sentence of the length that

19    I have imposed here.

20            Courts generally enforce such waivers, but if you

21    believe that notwithstanding your plea agreement you still

22    have the right to appeal your sentence, then you should go

23    ahead and appeal your sentence and make your argument to the

24    Court of Appeals.

25            If you wish to appeal your conviction, your

1    sentence, or both, you must file a notice of appeal within

2    14 days after the entry of judgment of conviction in this

3    case.

4         If you cannot afford to pay the costs of an

5    appeal, you can ask for permission to appeal

6    *in forma pauperis.*  In other words, you can ask permission

7    to be excused from paying any fees or costs.  If you make

8    that request, the Clerk of Court will file a notice of

9    appeal on your behalf.

10        The presentence investigation report will be kept

11   in the court's files under seal.  If you file an appeal,

12   that report will be forwarded to the Eighth Circuit Court of

13   Appeals.  That's the court to which an appeal from here

14   would go.

15        All right.  We have sealed filings here, in

16   particular docket entries 25 and 34.  Those are letters

17   submitted by family and friends of Mr. Gonzales.

18        Mr. Benson, would you like to file a motion or

19   move at this time to keep those records under seal?

20        MR. BENSON:  I would move to keep them under seal,

21   Your Honor.

22        THE COURT:  For how long?

23        MR. BENSON:  If that's sufficient.  If the Court

24   would prefer a motion, I can file one.

25        THE COURT:  No, an oral motion is just fine.  How

24

1   long?

2           MR. BENSON:  I'd say eight years, Your Honor.

3           THE COURT:  Any concerns, Mr. Winter?

4           MR. WINTER:  No, Your Honor.

5           THE COURT:  All right.  That motion's granted.

6   I'll order those to remain under seal for a period of eight

7   years.

8           Mr. Gonzales is not currently in custody and I am

9   inclined to permit Mr. Gonzales to self-surrender given all

10  of the factors and circumstances here.

11          Mr. Winter, any objection to that?

12          MR. WINTER:  No objection.

13          THE COURT:  Mr. Benson, I have a date in mind.

14  I'm not sure if Mr. Gonzales has a date in mind.  Is this

15  something that you'd like to --

16          MR. BENSON:  We've spoken about it, Your Honor.

17  We'd ask for a 30-day date given the -- I think his initial

18  intention was to get it done sooner rather than later.

19  However, given his father's situation, we'd like to have 30

20  days to at least -- so he can be around for whatever happens

21  in the next 30 days.

22          THE COURT:  All right.

23          (Discussion off the record between the Court and

24  the courtroom deputy)

25          THE COURT:  June 29th or July 6th?

1        MR. BENSON:  The 29th, Your Honor.

2        THE COURT:  So, Mr. Gonzales, I'll order you to

3   surrender for service of your sentence at the institution

4   designated by the Bureau of Prisons by noon on June 29th,

5   Tuesday, June 29th, as notified by the Probation and

6   Pretrial Services Office.  In the event that you have not

7   been designated by the Bureau of Prisons on or before

8   Friday, June 25th, then I will order that you surrender to

9   the United States Marshal for this district in Minneapolis

10  by 10:00 a.m. on the 29th.

11       I will also order that the conditions of release

12  previously ordered remain in effect.

13       Mr. Benson, any questions about that process?

14       MR. BENSON:  No, Your Honor.

15       THE COURT:  All right.  Thank you.

16       Mr. Benson, anything further that you think we

17  need to cover here today?

18       MR. BENSON:  No, thank you, Your Honor.

19       THE COURT:  Okay.  Mr. Winter, same question.

20       MR. WINTER:  No, Your Honor.  Thank you.

21       THE COURT:  All right.  Mr. Gonzales, good luck to

22  you.

23       THE DEFENDANT:  Thank you, Your Honor.

24       THE COURT:  All right.  We'll stand adjourned.

25  Thank you.

(Proceedings concluded at 9:43 a.m.)

                    *      *      *      *




                C  E  R  T  I  F  I  C  A  T  E



I, **TIMOTHY J. WILLETTE**, Official Court Reporter

for the United States District Court, do hereby

certify that the foregoing pages are a true and

accurate transcription of my shorthand notes,

taken in the aforementioned matter, to the best

of my skill and ability.




                */s/ Timothy J. Willette*


            **TIMOTHY J. WILLETTE, RDR, CRR, CRC**
        Official Court Reporter - U.S. District Court
      Warren E. Burger Federal Building & U.S. Courthouse
            316 North Robert Street - Suite 146
                St. Paul, Minnesota  55101
                      651.848.1224